B1040 (FORM 1040) (12/15)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>James Berman, Chapter 7 Trustee for the Substantively Consolidated Estate of Michael S. Goldberg, LLC and Michael S. Goldberg | DEFENDANTS<br>DEI PROPERTY MANAGEMENT, LLC, ROLAND G. LABONTE, MARILYN P. LABONTE, ROLAND G. LABONTE, TRUSTEE OF THE ROLAND G. LABONTE REVOCABLE TRUST, and MARILYN P. LABONTE, TRUSTEE OF THE MARILYN P. LABONTE REVOCABLE TRUST |
|---|---|
| ATTORNEYS (Firm Name, Address, and Telephone No.)<br>James M. Moriarty<br>Zeisler & Zeisler, P.C.<br>10 Middle Street, 15th Floor, Bridgeport, CT 06604 | ATTORNEYS (If Known) |
| PARTY (Check One Box Only)<br>☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☐ Other<br>☒ Trustee | PARTY (Check One Box Only)<br>☐ Debtor       ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor     ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

The Trustee seeks to avoid and recover fraudulent transfers pursuant to Connecticut Uniform Fraudulent Transfer Act, Conn. Gen. Stat. § 52-552a, et seq.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
- ☐ 11-Recovery of money/property – §542 turnover of property
- ☐ 12-Recovery of money/property – §547 preference
- ☐ 13-Recovery of money/property – §548 fraudulent transfer
- ☒ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
- ☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
- ☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
- ☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
- ☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
- ☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
- ☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
- ☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
- ☐ 61-Dischargeability - §523(a)(5), domestic support
- ☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
- ☐ 63-Dischargeability - §523(a)(8), student loan
- ☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
- ☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
- ☐ 71-Injunctive relief – imposition of stay
- ☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
- ☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
- ☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
- ☐ 01-Determination of removed claim or cause

**Other**
- ☐ SS-SIPA Case – 15 U.S.C. §§78aaa et.seq.
- ☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☒ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ 1.1 million |

Other Relief Sought

Avoidance of fraudulent transfers, finding of successor liability, piercing the corporate veil

B1040 (FORM 1040) (12/15)

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Michael S. Goldberg, LLC and Michael S.Goldberg | BANKRUPTCY CASE NO.<br>Case Nos. 09-23370 and 09-23371 | |
| DISTRICT IN WHICH CASE IS PENDING<br>Connecticut | DIVISION OFFICE<br>Bridgeport | NAME OF JUDGE<br>Judge Julie A. Manning |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY<br>PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | |
| DATE<br>June 2, 2017 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br>James M. Moriarty | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also must complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF CONNECTICUT**
**BRIDGEPORT DIVISION**

| | |
|---|---|
| In re: | : Chapter 7 |
| | : |
| MICHAEL S. GOLDBERG, LLC, and | : Case No. 09-23370 (JAM) |
| MICHAEL S. GOLDBERG, | : Substantively Consolidated |
| | : |
| Debtors. | : |
| | : |
| JAMES BERMAN, CHAPTER 7 TRUSTEE FOR THE | : Adv. Proc. No. |
| SUBSTANTIVELY CONSOLIDATED ESTATE OF MICHAEL S. | : |
| GOLDBERG, LLC AND MICHAEL S. GOLDBERG, | : |
| | : |
| Plaintiff, | : |
| v. | : |
| | : |
| DEI PROPERTY MANAGEMENT, LLC, ROLAND G. | : JUNE 2, 2017 |
| LABONTE, MARILYN P. LABONTE, ROLAND G. | : |
| LABONTE, TRUSTEE OF THE ROLAND G. LABONTE | : |
| RECOCABLE TRUST, and MARILYN P. LABONTE, | : |
| TRUSTEE OF THE MARILYN P. LABONTE REVOCABLE | |
| TRUST, | |
| | |
| Defendants. | |

**<u>COMPLAINT</u>**

The Plaintiff, James Berman, Chapter 7 Trustee (the "Trustee") for the substantively

consolidated bankruptcy estates of Michael S. Goldberg, LLC d/b/a Acquisitions Unlimited

Group and Michael S. Goldberg ("Goldberg") (collectively referred to herein as the "Debtor" or

the "Debtors"), as and for his Complaint against DEI Property Management, LLC ("DEIPM"),

Roland G. LaBonte ("R. LaBonte"), Marilyn P. LaBonte ("M. LaBonte"),  Roland G. LaBonte,

as Trustee of the Roland G. LaBonte Revocable Trust ("R. LaBonte Trustee") and Marilyn P.

LaBonte, as Trustee of the Marilyn P. LaBonte Revocable Trust ("M. LaBonte Trustee") alleges as follows:

## SUMMARY OF THE CLAIMS

For nearly twelve (12) years the Debtor ran a pure Ponzi Scheme (hereinafter the "Goldberg Scheme").  The Goldberg Scheme collapsed in the Fall of 2009 at which time Goldberg turned himself in to federal law enforcement authorities.  Soon thereafter the Trustee was appointed and since 2010 he has been investigating and prosecuting claims in an effort to recover the more than $30,000,000 lost by investors in the Goldberg Scheme.

Amongst the many claims pursed by the Trustee were intentional fraudulent transfer claims against Goldberg Scheme investor and feeder Scott A. LaBonte ("S. LaBonte"), the son of R. LaBonte and M. LaBonte.  S. LaBonte received more than $7.2 million in transfers from the Goldberg Scheme through his cousin Edward Malley ("Malley"), who was also a Goldberg Scheme investor and feeder.

Following the collapse of the Goldberg Scheme, and almost immediately after Malley was sued by the Trustee in May 2010 to recover more than $14 million in intentionally fraudulent transfers he received from the Goldberg Scheme, S. LaBonte transferred all of his assets, consisting primarily of interests in single purpose real estate entities and the stock of closely held corporations, to an irrevocable trust (the "Dynasty Trust").  S. LaBonte completely dominated and controlled the Dynasty Trust despite the fact that his wife, Sally A. LaBonte ("Sally"), R. LaBonte- his father- and his family's long-time accountant Joseph Sparveri, were the then named trustees.  S. LaBonte transferred his assets to the Dynasty Trust in a blatant attempt to place them beyond the reach of the Trustee, knowing he would be sued by the Trustee once the Trustee discovered the transfers of Debtor property S. LaBonte had received through Malley.

2

The Trustee sued S. LaBonte in November 2010, tried his claims against S. LaBonte to the United States Bankruptcy Court in June 2011, and in May 2015, the Hon. Albert S. Dabrowski issued Amended Proposed Findings of Facts and Conclusions of law recommending that judgement enter in the Trustee's favor and against S. LaBonte in the amount $7,241,797.52, plus prejudgment interest at the rate of 3.25% running from November 12, 2010.  The Trustee is presently awaiting entry of judgment by the United States District Court against S. LaBonte in the amounts recommended by Judge Dabrowski.

The Trustee commenced litigation in May 2014 against the trustees of the Dynasty Trust (the "Dynasty Trust Action"), which at that time included Sally and R. LaBonte, as well as against Sally individually and certain of S. LaBonte's business interests to, *inter alia*, avoid the intentionally fraudulent transfers S. LaBonte made to the Dynasty Trust and to avoid subsequent transfers made by the Dynasty Trust to other insiders of S. LaBonte.

Among the named defendants in the Dynasty Trust Action is Devcon Enterprises, Inc. ("Devcon"), a property management company that was owned and controlled by S. LaBonte and R. LaBonte.  R. LaBonte was the Chairman of Devcon and S. LaBonte was Devcon's President and Chief Executive Officer.  S. LaBonte, and following the fraudulent conveyance of all of his assets in 2010, the Dynasty Trust, owned the vast majority of Devcon's stock, with the ownership percentage increasing year-over-year until approximately January 2015 at which time the Dynasty Trust owned one hundred percent (100%) of Devcon's stock.

In July 2014, the Trustee filed an application for prejudgment remedy against various defendants in the Dynasty Trust Action, including seeking an attachment of more than $1 million against Devcon's property.  In January 2015, prior to the closing of the record of the Trustee's prejudgment remedy application in the Dynasty Trust Action, the first-named defendant herein,

3

DEIPM, was formed and Devcon's entire business and business assets were soon thereafter transferred to DEIPM. Devcon's employees instantly became DEIPM's employees, Devcon's management contracts were terminated and its clients immediately entered into new management contracts with DEIPM, Devcon's furniture and equipment were moved to DEIPM's new office space one floor below Devcon's then existing office space in West Hartford, and Devcon's material vendor contracts and employee benefit plans were assigned to DEIPM.

In sum, Devcon intentionally fraudulently transferred its entire business to DEIPM to hinder, delay and defraud the Trustee in his efforts to avoid and recover fraudulent transfers made to Devcon by S. LaBonte and/or the Dynasty Trust. R. LaBonte and M. LaBonte aided and abetted the fraudulent transfer and their respective revocable trusts, as owners of DEIPM, have reaped, and will continue to reap, the benefit of those fraudulent transfers. By this action, the Trustee seeks to avoid the fraudulent transfers from Devcon to DEIPM and to hold DEIPM liable on any judgment the Trustee obtains against Devcon inasmuch as DEIPM is the successor to, and a mere continuation of, Devcon. The Trustee further seeks to recover damages from R. LaBonte and M. LaBonte in their individual capacities and as trustees of the trusts that own DEIPM for their respective roles in aiding and abetting Devcon's fraudulent transfers, and to pierce the corporate veil of DEIPM in order to hold R. LaBonte, and M. LaBonte, both individually and in their capacity as trustee of their respective revocable trusts, liable for any judgment obtained against DEIPM.

## JURISDICTION, VENUE AND NATURE OF THIS PROCEEDING

1.     On November 18, 2009 (the "Petition Date"), certain petitioning creditors filed an involuntary petition for relief under Chapter 7 of the Bankruptcy Code against the Debtors.

2.     On November 24, 2009, the Court entered the Order for Relief in the Debtors' cases.

4

3. By Orders dated January 11, 2010, the Court confirmed the election of James Berman as Chapter 7 Trustee in both cases.

4. On October 5, 2012, the Court entered its order substantively consolidating the Debtors' bankruptcy estates.

5. This Court has jurisdiction, under 28 U.S.C. §§ 157 and 1334(b), over this proceeding because the claims asserted herein are related to a case pending under the Bankruptcy Code in the United States Bankruptcy Court for the District of Connecticut, Bridgeport Division (the "Bankruptcy Court").

6. This matter is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), and (H).

7. Venue of this adversary proceeding in the Bankruptcy Court is proper pursuant to 28 U.S.C. § 1409(a) because the Debtors' cases are pending in this district and division.

## PARTIES AND KEY NON-PARTIES

8. The Trustee is the duly appointed Chapter 7 Trustee for the Debtor and has standing as Trustee to pursue claims against any individual or entity that received avoidable transfers from the Debtor, from a transferee of the Debtor, or from an individual or entity the Trustee has a claim against.  11 U.S.C. §§541-549.

9. DEIPM is a limited liability company, organized and existing under the laws of the State of Connecticut, with its primary place of business located at 433 South Main Street, Suite 218, West Hartford, Connecticut 06110.

10. R. LaBonte is an individual with a residence address of 376 Eagle Drive, Jupiter, Florida 33477.  R. LaBonte is: i) the spouse of M. LaBonte, ii) the father of S. LaBonte, iii) a trustee of the Dynasty Trust, iv) the manager of DEIPM, v) the former Chairman of Devcon, and vi) a trustee of the Roland G. LaBonte Revocable Trust which is a member of DEIPM.

5

11.     M. LaBonte is an individual with a residence address of 376 Eagle Drive, Jupiter, Florida 33477.  M. LaBonte is:  i) the spouse of R. LaBonte, ii) the mother of S. LaBonte, and iii) a trustee of the Marilyn P. LaBonte Revocable Trust which is a member of DEIPM.

12.     Non-party Devcon was a Connecticut corporation with a principal place of business located at 433 South Main Street, Suite 300, West Hartford, Connecticut 06110.

13.     Non-party S. LaBonte is: i) the son of M. LaBonte and R. LaBonte, ii) the settlor of the Dynasty Trust, which at the time of the transfers in question owned 100% of Devcon's stock, and iii) the President and Chief Executive Officer of Devcon, which was dissolved following the fraudulent transfers described herein.

## FACTS COMMON TO ALL COUNTS

### a.  S. LaBonte's Efforts to Hinder, Delay and Defraud the Trustee

14.     In October 2009, following the collapse of the Debtor's Ponzi Scheme, Goldberg turned himself in to federal authorities.  On or about November 16, 2009, Goldberg admitted to federal authorities that he had been running a Ponzi Scheme.  On September 13, 2010, Goldberg entered a plea of guilty to federal wire fraud charges in connection with his operation of the Goldberg Scheme.

15.     On May 16, 2011, the Honorable Robert N. Chatigny sentenced Goldberg to a term of imprisonment of 120 months and imposed an order of restitution in the amount of $31,023,035.40.

16.     S. LaBonte invested in the Goldberg Scheme through Malley.

17.     R. LaBonte invested in the Goldberg Scheme through S. LaBonte.

18.     Chad LaBonte, the brother of S. LaBonte and son of R. LaBonte and M. LaBonte, also invested in the Goldberg Scheme through S. LaBonte.

6

19.    Shortly after the Goldberg Scheme was publicly announced in November, 2009, S. LaBonte learned from Malley that Goldberg was "a crook" and had been running a Ponzi scheme.

20.    On or about May 14, 2010, the Trustee commenced an adversary proceeding (the "Malley Adversary Proceeding") against Malley and others seeking, among other relief, to recover more than $14 million in fraudulent transfers Malley received from the Goldberg Scheme.

21.    Malley was served with process in the Malley Adversary Proceeding on May 21, 2010.  Shortly thereafter Malley told S. LaBonte that Malley had been sued by the Trustee.

22.    By no later than May, 2010, S. LaBonte knew or strongly suspected that the Trustee would uncover his investments in the Goldberg Scheme, and knew or strongly suspected that the Trustee's discovery of those investments would cause the Trustee to bring an action against him to recover the millions of dollars that he had received from the Goldberg Scheme.  S. LaBonte also knew or strongly suspected that his property and assets were vulnerable to the claims held by and the remedies available to the Trustee.

23.    Commencing in approximately late May, 2010, after coming to the realization that he almost certainly would be sued by the Trustee for millions and millions of dollars, S. LaBonte transferred all of his assets, whether in his name or in the name of the Scott A. LaBonte Revocable Trust, consisting primarily of interests in single purpose real estate entities and stock of closely held corporations, to the Dynasty Trust in an effort to place all of his assets beyond the reach of the Trustee.

24.    The Trustees of the Dynasty Trust in June 2010 were R. LaBonte, Sally, and Joseph W. Sparveri, Jr., the long-time accountant of both S. LaBonte and R. LaBonte.

7

25.     S. LaBonte made the asset transfers to the Dynasty Trust effective June 2, 2010, but the assignment, assumption and consent agreements necessary to effectuate the transfers were not fully executed until at least August 2010.

26.     Among the assets transferred to the Dynasty Trust was Devcon stock consisting of 10 shares of Class A Voting Common Capital Stock and 100 shares of Class B Non-Voting common Capital Stock.

### b.     Devcon's Business, Management and Ownership Structure

27.     Devcon was a property management company founded in 1976.  Devcon provided property development and management services for retail, residential, office and industrial developments, primarily those owned and/or controlled by LaBonte family members.  Devcon touted itself on its website in July 2010 as "a full service real estate development, management and investment company [that had] been building relationships for over 30 years."

28.     During that same time period, Devcon's website also touted Devcon's property development expertise:  "[f]or retail, residential, office and industrial developments, Devcon is the professional choice for superior real estate services.  As developers of several thousand units of multi-family housing and over one million square feet of commercial space, we offer proven performance in all facets of real estate development, management and investments."

29.     Devcon's employees also performed accounting, bookkeeping and other functions for the single purpose real estate entities that owned the real estate asset, or an interest in the real estate asset, for which Devcon provided property management services.

30.     S. LaBonte was Devcon's President and Chief Executive Officer.  R. LaBonte was Devcon's chairman.  Upon information and belief, S. LaBonte and R. LaBonte were the

only two members of Devcon's Board of Directors, and had been the only Board members since at least June 2009.

31.     Upon information and belief, in or about June 2004, S. LaBonte and the LaBonte Family Dynasty Trust, a trust settled by R. LaBonte, entered into a stock purchase agreement pursuant to which S. LaBonte would obtain one hundred percent of Devcon's stock over time as a result of the LaBonte Family Dynasty Trust transferring its Devcon stock to S. LaBonte.

32.     Upon further information and belief, in or about January 2015, the final outstanding Devcon shares were transferred to the Dynasty Trust, which already owned almost all of Devcon's shares as a result of S. LaBonte's transfer of all of his assets to the Dynasty Trust effective June 2, 2010.  Following the transfer of the final shares in January 2015 the Dynasty Trust owned one hundred percent of Devcon's stock.

### c.  The Trustee's Claims Against S. LaBonte and LaBonte Family Members

33.     In November 2010, The Trustee amended his complaint in the Malley Adversary Proceeding to add S. LaBonte and certain entities he owned and/or controlled as defendants.  The Trustee added S. LaBonte and the other related entities as defendants seeking to, *inter alia*, avoid and recover the fraudulent transfers they received from the Goldberg Scheme.

34.     The claims against, *inter alia*, S. LaBonte and his entities asserted in the Malley Adversary Proceeding were tried to the Hon. Albert S. Dabrowski, U.S.B.C.J., over a five-day period in June 2011.

35.     On March 31, 2015, Judge Dabrowski issued a decision in the Malley Adversary Proceeding consisting of Proposed Findings of Facts and Conclusions of Law, which were non-substantively amended on May 11, 2015 (hereinafter the "Proposed Findings").  In the Proposed Findings Judge Dabrowski recommends that judgment enter against S. LaBonte in the amount of

$7,241,797.52, plus prejudgment interest at the rate of 3.25% running from November 12, 2010. Judge Dabrowski also recommends that judgment enter against the S. LaBonte controlled entities in the full amount sought by the Trustee, with prejudgment interest also at the rate of 3.25% running from November 12, 2010.

36.    On March 31, 2015, Judge Dabrowski also issued an Order granting the Trustee's motion for adverse inferences as sanctions for S. LaBonte's spoliation of evidence resulting from his egregious, knowing and intentional deletion of emails even after he was named as a defendant to the Malley Adversary Proceeding.

37.    S. LaBonte filed objections to Judge Dabrowski's Proposed Findings which objections are pending before the Hon. Alvin W. Thompson, U.S.D.J.  The Trustee believes that the objections are without merit, will be rejected, and that judgment will issue in his favor in the full amount recommended by Judge Dabrowski.

38.    On or about August 29, 2011, the Trustee commenced an adversary proceeding against, among others, R. LaBonte and Chad LaBonte pursuant to which the Trustee seeks to recover fraudulent transfers from the Debtor to R. LaBonte and Chad LaBonte as subsequent transferees of S. LaBonte.  The claims asserted against R. LaBonte have been stayed pending a ruling on S. LaBonte's pending objections to the Proposed Findings.  Chad LaBonte filed for bankruptcy and received a discharge.  As a result, the Trustee's claims against Chad LaBonte were withdrawn.

> **d.  The Trustee's Claims Against the Dynasty Trust,**
> **S. LaBonte's Entities and S. LaBonte's Family**

39.    In May 2014, the Trustee commenced the Dynasty Trust Action against, among others, the trustees of the Dynasty Trust, Devcon, and Sally individually, to avoid and recover

the 2010 transfers from S. LaBonte to the Dynasty Trust, as well as subsequent transfers from the Dynasty Trust to, among others, Sally and Devcon.

40.    The Trustee also alleged in the Dynasty Trust Action that the Dynasty Trust is the alter ego of S. LaBonte such that any transfers from the Dynasty Trust to Devcon, Sally, and others constitute initial fraudulent transfers from S. LaBonte.

41.    In the Dynasty Trust Action the Trustee seeks to avoid and recover $1,147,404 in transfers from S. LaBonte and/or the Dynasty Trust to Devcon.

42.    On July 30, 2014, the Trustee filed a Prejudgment Remedy Application (the "PJR Application") in the Dynasty Trust Action seeking to attach, *inter alia*, $1,147,404 of Devcon's property.

43.    Hearings were held on the PJR Application before Judge Dabrowski on November 10 and 12, 2014 and December 15, 2104.  The parties thereafter submitted post hearing briefing and the court heard oral argument in February 2015.  Judge Dabrowski retired from the bench on March 31, 2015, without issuing a decision on the PJR Application, and the PJR Application is presently *sub judice* before the Hon. Alvin W. Thompson.

### e.    Devcon's Efforts to Hinder, Delay and Defraud the Trustee

44.    Unbeknownst to the Trustee, as he was prosecuting his PJR Application, Devcon, through its President and Chief Executive Officer, S. LaBonte, and Chairman, R. LaBonte, was engaging in a scheme to ensure that any PJR, or subsequent judgment, obtained against Devcon would be worthless.  The scheme included the creation of a new entity, DEIPM, the transfer of all of Devcon's business and assets to DEIPM, and the simultaneous dissolution of Devcon.

45.     DEIPM was registered as a Connecticut Limited Liability Company effective January 9, 2015.  DEIPM's members are the Marilyn P. LaBonte Revocable Trust and the Roland G. LaBonte Revocable Trust.  R. LaBonte is the manager of DEIPM.

46.     The business of DEIPM is exactly the same as the business of Devcon.

47.     The employees of DEIPM are, or at least were at the time that Devcon's business and assets were transferred to DEIPM in or about February or March 2015, the same individuals who were employed by Devcon at the time it transferred its business to DEIPM.

48.     Devcon assigned its material vendor and employee benefits contracts to DEIPM, including its contract with Yardi, a company that provides accounting software to property management companies.

49.     DEIPM acquired office space in the same building at which Devcon maintained its office space, 433 South Main Street, West Hartford, Connecticut 06110.  Following DEIPM's acquisition of office space, all of Devcon's office furniture and equipment was moved to DEIPM's office space, one floor below Devcon's then existing office space.

50.     In an apparent effort to legitimize the transfer of Devcon's business to DEIPM, Devcon's property management contracts were terminated and its clients, most of whom are entities controlled by S. LaBonte and/or R. LaBonte, either directly or through trusts, immediately entered into property management contracts with DEIPM.

51.     Absent Devcon's fraudulent transfer of its assets to DEIPM, the revenue generated by Devcon, whether pursuant to its property management contracts or otherwise, including a fee of nearly $850,000 paid to DEIPM in January 2016 in connection with the closing of a certain transaction, would have been available for attachment to secure the judgment

the Trustee expects to obtain against Devcon.  Those same assets would also have been available

to satisfy any judgment the Trustee obtains.

52.    Devcon was dissolved effective March 30, 2015.

53.    At the time of its dissolution Devcon had been in business for nearly forty (40)

years.  The only reason for dissolving Devcon and transferring its business to DEIPM was to

place Devcon's assets beyond the reach of the Trustee, whether in connection with the PJR

Application or a final judgment.

54.    Upon information and belief, Devcon did not receive reasonably equivalent value

for the transfer of all of its assets to DEIPM.

55.    S. LaBonte, R. LaBonte and M. LaBonte were aware of the Trustee's claims

against Devcon at the time Devcon transferred its assets to DEIPM.

**First Claim for Relief (Intentional Fraudulent Transfer
Pursuant to Conn. Gen. Stat. § 52-552e(a)(1)) against all Defendants**

56.    Paragraphs 8-55 are repeated and realleged as if fully set forth herein.

57.    The Trustee held a claim against Devcon as that term is defined in Conn. Gen.

Stat. § 52-552b(3).  The Trustee's claim arose before Devcon transferred its assets to DEIPM.

58.    Devcon transferred its assets to DEIPM with the actual intent to hinder, delay or

defraud its creditors including the Trustee.

59.    Devcon's transfer of its assets to DEIPM under the circumstances herein

described constitute fraudulent transfers within the meaning of, and in violation of, Conn. Gen.

Stat. § 52-552e(a)(1).

60.    Pursuant to Conn. Gen. Stat. §52-552i, the Trustee may "recover judgment for the

value of the asset transferred, as adjusted under subsection (d) of this section, or the amount

necessary to satisfy the creditor's claim, whichever is less.  The judgment may be entered

13

against: (1) the first transferee of the asset or the person for whose benefit the transfer was made

. . .".

61.     DEIPM is the first transferee of the asset.

62.     Prior to the transfer of Devcon's business DEIPM was a shell with no assets.  The

transfer of Devcon's business provided the owners of DEIPM with a seasoned, forty-year-old

operating business that would generate returns on the owner's respective investment in DEIPM.

Thus, the Roland G. LaBonte Revocable Trust and the Marilyn P. LaBonte Revocable Trust, as

the members of DEIPM, and R. LaBonte and M. LaBonte, as the respective settlors and trustees

of the Roland G. LaBonte Revocable Trust and the Marilyn P. LaBonte Revocable Trust, are the

person(s) for whose benefit the transfer was made.

**Second Claim for Relief (Constructive Fraudulent Transfer
Pursuant to Conn. Gen. Stat. § 52-552e(a)(2)) against all Defendants**

63.     Paragraphs 8-55 of this Complaint are repeated and realleged as if fully set forth

herein.

64.     The Trustee held a claim against Devcon as that term is defined in Conn. Gen.

Stat. § 52-552b(3).  The Trustee's claim arose before Devcon transferred its assets to DEIPM.

65.     Upon information and belief, Devcon did not receive reasonably equivalent value

from DEIPM in exchange for the transfer of Devcon's assets.

66.     Following the transfer of all of its assets to DEIPM Devcon was dissolved.  Thus,

Devcon transferred its assets to DEIPM at a time when (A) Devcon was engaged in, or was about

to engage in, a business or transaction for which the remaining assets of Devcon, if any, were

unreasonably small in relation to the business or transaction; and/or (B) Devcon intended to

incur, or believed or reasonably should have believed that it would incur debts beyond its ability

to pay as they became due, including the judgment sought by the Trustee.

14

67.    Devcon's transfer of all of its assets to DEIPM under the circumstances described herein constitute fraudulent transfers within the meaning of, and in violation of, Conn. Gen. Stat. § 52-552e(a)(2).

68.    Pursuant to Conn. Gen. Stat. §52-552i, the Trustee may "recover judgment for the value of the asset transferred, as adjusted under subsection (d) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less.  The judgment may be entered against: (1) the first transferee of the asset or the person for whose benefit the transfer was made . . .".

69.    DEIPM is the first transferee of the asset.

70.    Prior to the transfer of Devcon's business DEIPM was a shell with no assets.  The transfer of Devcon's business provided the owners of DEIPM with a seasoned, forty-year-old operating business that would generate returns on the owner's respective investment in DEIPM.  Thus, the Roland G. LaBonte Revocable Trust and the Marilyn P. LaBonte Revocable Trust, as the members of DEIPM, and R. LaBonte and M. LaBonte, as the respective settlors and trustees of the Roland G. LaBonte Revocable Trust and the Marilyn P. LaBonte Revocable Trust, are the person(s) for whose benefit the transfer was made.

### Third Claim for Relief (Constructive Fraudulent Transfer Pursuant to Conn. Gen. Stat. § 52-552f(a)) against all Defendants

71.    Paragraphs 8-55 of this Complaint are repeated and realleged as if fully set forth herein.

72.    The Trustee held a claim against Devcon as that term is defined in Conn. Gen. Stat. § 52-552b(3) and such claim arose before Devcon transferred its assets to DEIPM.

73.    Upon information and belief, Devcon did not receive reasonably equivalent value from DEIPM in exchange for the transfer of Devcon's assets.

74.    Upon information and belief, Devcon was insolvent at the time of or became insolvent as a result of the transfer of its assets to DEIPM.

75.    Devcon's transfer of all of its assets to DEIPM under the circumstances described herein constitute fraudulent transfers within the meaning of, and in violation of, Conn. Gen. Stat. § 52-552f(a).

76.    Pursuant to Conn. Gen. Stat. §52-552i, the Trustee may "recover judgment for the value of the asset transferred, as adjusted under subsection (d) of this section, or the amount necessary to satisfy the creditor's claim, whichever is less.  The judgment may be entered against: (1) the first transferee of the asset or the person for whose benefit the transfer was made . . .".

77.    DEIPM is the first transferee of the asset.

78.    Prior to the transfer of Devcon's business DEIPM was a shell with no assets.  The transfer of Devcon's business provided the owners of DEIPM with a seasoned, forty-year-old operating business that would generate returns on the owner's respective investment in DEIPM.  Thus, the Roland G. LaBonte Revocable Trust and the Marilyn P. LaBonte Revocable Trust, as the members of DEIPM, and R. LaBonte and M. LaBonte, as the respective settlors and trustees of the Roland G. LaBonte Revocable Trust and the Marilyn P. LaBonte Revocable Trust, are the person(s) for whose benefit the transfer was made.

**Fourth Claim for Relief**
**(Successor Liability) against DEIPM**

79.    Paragraphs 8-55 of this Complaint are repeated and realleged as if fully set forth herein.

16

80.     In the Dynasty Trust Action the Trustee seeks to avoid and recover transfers from S. LaBonte and/or the Dynasty Trust to Devcon in the amount of $1,147,404.

81.     Devcon transferred its entire business to DEIPM to hinder, delay and defraud the Trustee in his efforts to avoid and recover the transfers made to Devcon.

82.     The transfer of Devcon's assets to DEIPM was fraudulent.

83.     DEIPM has continued the business of Devcon in the same form and manner as it existed prior to Devcon's transfer of its assets to DEIPM.

84.     DEIPM is a mere continuation of Devcon.

85.     Based on the foregoing, DEIPM is liable for the debts and liabilities of Devcon as Devcon's successor.

**Fifth Claim for Relief (Aiding and Abetting a Fraudulent Transfer) against
R. LaBonte, M. LaBonte, R. LaBonte Trustee and M. LaBonte Trustee**

86.     Paragraphs 8-55 of this Complaint are repeated and realleged as if fully set forth herein.

87.     The principles of law and equity supplement the provisions of the Connecticut Uniform Fraudulent Transfer Act ("CUFTA").  Conn. Gen. Stat. §52-552k.

88.     Potentially available relief under CUFTA includes "any other relief the circumstances may require."  Conn. Gen. Stat. §52-552h(a)(C).

89.     Devcon fraudulently transferred its assets, consisting of its entire business, and was then dissolved, all in an effort to hinder, delay and defraud the Trustee's efforts to recover for the benefit of the Debtors' creditors.  Devcon's transfer of its assets to DEIPM at a time when the Trustee: (i) held a claim against Devcon, (ii) had already commenced the Dynasty Trust Action naming as defendants, among others, Devcon, and (iii) had filed and was prosecuting the PJR Application, constitutes a wrongful act that has caused injury to the Debtors' creditors by, at

17

a minimum, causing the Debtors' estate to incur costs and fees to commence this action to avoid the transfers to DEIPM.

90.      R. LaBonte is a named defendant in a 2011 adversary proceeding whereby the Trustee seeks to recover fraudulent transfers R. LaBonte received from the Goldberg Scheme as a subsequent transferee of S. LaBonte.  R. LaBonte is also a named defendant in the Dynasty Trust Action in his capacity as a trustee of the Dynasty Trust.  R. LaBonte is aware that the Trustee is pursuing the Dynasty Trust Action to avoid certain fraudulent transfers, including transfers from the Dynasty Trust to Devcon.

91.      Upon information and belief, R. LaBonte was generally aware that the transfers from Devcon to DEIPM were illegal and/or unlawful.

92.      R. LaBonte knowingly and substantially assisted in Devcon's fraudulent transfer of its assets to DEIPM by serving as DEIPM's manager and by causing, in his capacity as trustee, the Roland G. LaBonte Revocable Trust to acquire a membership interest in DEIPM.

93.      M. LaBonte is the spouse of R. LaBonte, the mother of S. LaBonte and the mother of Chad LaBonte, all of whom were sued by the Trustee to recover fraudulent transfers received from the Goldberg Scheme.  M. LaBonte is also the mother-in-law of Sally who is a Trustee of the Dynasty Trust and named defendant in the Dynasty Trust Action both individually and in her capacity as a trustee of the Dynasty Trust.

94.      M. LaBonte is at least generally aware of the numerous lawsuits filed against her husband, children and daughter-in-law, all of which seek or sought to recover fraudulent transfers, including S. LaBonte's intentional fraudulent transfers to the Dynasty Trust to place his assets beyond the Trustee's reach.

95.    Upon information and belief, M. LaBonte was generally aware that the transfers from Devcon to DEIPM were illegal and/or unlawful.

96.    M. LaBonte knowingly and substantially assisted in Devcon's fraudulent transfer of its assets to DEIPM by causing, in her capacity as trustee, the Marilyn P. LaBonte Revocable Trust to acquire a membership interest in DEIPM.

97.    R. LaBonte aided and abetted the fraudulent transfer of Devcon's assets to DEIPM both in his individual capacity and in his capacity as trustee of the Roland G. LaBonte Revocable Trust.

98.    M. LaBonte aided and abetted the fraudulent transfer of Devcon's assets to DEIPM both in her individual capacity and in her capacity as trustee of the Marilyn P. LaBonte Revocable Trust.

### Sixth Claim for Relief (Piercing the Corporate Veil) against R. LaBonte, M. LaBonte, R. LaBonte Trustee and M. LaBonte Trustee

99.    Paragraphs 8-55 of this Complaint are repeated and realleged as if fully set forth herein.

100.    The members of DEIPM are the Roland G. LaBonte Revocable Trust, settled by R. LaBonte who is also a trustee, and the Marilyn P. LaBonte Revocable Trust, settled by M. LaBonte who is also a trustee.

101.    R. LaBonte is the manager of DEIPM.

102.    At the time of its creation DEIPM had no business.

103.    Within weeks of DEIPM's creation, R. LaBonte, R. LaBonte Trustee, M. LaBonte, and M. LaBonte Trustee, exercising complete domination and control over DEIPM, caused DEIPM to accept the transfer of all of Devcon's assets and caused DEIPM to thereafter operate Devcon's transferred business in the same manner as it was operated prior to the transfer.

104.    At the time of the transfer of Devcon's assets to DEIPM, R. LaBonte and M. LaBonte, both individually and in their capacity as trustee of their respective revocable trusts, knew that: (i) Devcon was a named defendant in the Dynasty Trust Action, and (ii) the Trustee was seeking a PJR against Devcon to attach more than $1 million of Devcon's property.

105.    An entity that was not completely dominated and controlled, and had a separate mind, will or existence of its own, would not have accepted the assets of Devcon under the circumstances described above.

106.    DEIPM was a mere shell, served no legitimate purpose and was used primarily to further S. LaBonte's and the LaBonte Family's on-going efforts to hinder, delay and defraud the Trustee in his efforts to recover for the benefit of all of the Debtors' creditors.

107.    R. LaBonte's and M. LaBonte's complete control and domination over DEIPM, both individually and in their capacity as trustee of their respective revocable trusts, proximately caused the injury and unjust loss suffered by the Trustee and the Debtors' bankruptcy estates.

108.    This Court should pierce the veil of DEIPM and hold R. LaBonte and M. LaBonte, both individually and in their capacity as trustee of their respective revocable trusts, liable for the Trustee's claims against Devcon.

**WHEREFORE**, the plaintiff, James Berman, Trustee, respectfully requests that this Court enter the following relief in favor of the Trustee and against DEI Property Management, LLC Roland G. LaBonte, Marilyn P. LaBonte, Roland G. LaBonte, Trustee of the Roland G. LaBonte Revocable Trust, and Marilyn P. LaBonte, Trustee of the Marilyn P. LaBonte Revocable Trust:

a. The avoidance of the transfer of Devcon Enterprises, Inc.'s assets by Devcon Enterprises Inc. to DEI Property Management, LLC;

b. An attachment or other provisional remedy against the assets transferred or other property of DEI Property Management, LLC;

c. A temporary restraining order and preliminary and permanent injunctions against further disposition by DEI Property Management, LLC of the assets transferred or of other property;

d. The appointment of a receiver to take charge of the assets transferred or of other property of DEI Property Management, LLC;

e. Judgment as to all Defendants for the value of the assets transferred or the amount necessary to satisfy the Trustee's claims against Devcon Enterprises, Inc.;

f. Damages as to Roland G. LaBonte, Marilyn P. LaBonte, Roland G. LaBonte, trustee of the Roland G. LaBonte Revocable Trust and Marilyn P. LaBonte, Trustee of the Marilyn P. LaBonte Revocable Trust, in an amount to be proven at trial;

g. Entry of an Order piercing the veil of DEIPM and holding Roland G. LaBonte, Marilyn P. LaBonte, Roland G. LaBonte, trustee of the Roland G. LaBonte Revocable Trust and Marilyn P. LaBonte, Trustee of the Marilyn P. LaBonte

Revocable Trust liable for the Trustee's claims against DEI Property

Management, LLC.;

h.      Reasonable attorneys' fees;

i.      Pre-judgment interest;

j.      Costs; and

k.      Such other and further relief as the Court deems just and proper.

Dated at Bridgeport, Connecticut, this 2nd day of June, 2017.

JAMES BERMAN, CHAPTER 7 TRUSTEE
FOR THE SUBSTANTIVELY CONSOLITATED
ESTATE OF MICHAEL S. GOLDBERG, LLC AND
MICHAEL S. GOLDBERG

By: */s/ James M. Moriarty*
    Jed Horwitt
    James M. Moriarty
    ZEISLER & ZEISLER, P.C.
    10 Middle Street, 15th Floor
    Bridgeport, Connecticut 06604
    Tele: (203) 368-4234
    Fax: (203) 367-9678
    Email: jhorwitt@zeislaw.com
            jmoriarty@zeislaw.com

22